# In the United States Court of Federal Claims

**SLSCO, LTD.,**

        *Plaintiff,*

v.

**THE UNITED STATES,**

        *Defendant.*

No. 24-447

Filed: June 24, 2025

*Dean Baxtresser*, *Kyle R. Jefcoat*, *Genevieve P. Hoffman*, Latham & Watkins LLP, Washington, D.C., for Plaintiff.

*Nelson Kuan*, Trial Attorney, *Eric P. Bruskin*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brett A. Shumate*, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., and *J. Drew Piersa*, Assistant District Counsel, Los Angeles District, United States Army Corps of Engineers, Los Angeles, California, for Defendant.

## OPINION AND ORDER

**HADJI**, *Judge*.

    Plaintiff SLSCO, Ltd. (SLS) brings this action against the United States under the Tucker Act, 28 U.S.C. § 1491, and the Contract Disputes Act (CDA), 41 U.S.C. § 7101 *et seq.*, challenging a Contracting Officer's Final Decision (COFD) declining to overturn allegedly improper Contractor Performance Assessment Report (CPAR) ratings. Before the Court is the Government's Motion to Dismiss pursuant to Rule 12(b)(1) and 12(b)(6) (ECF 32). For the following reasons, the Government's Motion to Dismiss is **GRANTED**.

## BACKGROUND

    Plaintiff was one of several construction contractors tasked by the Government to construct a border wall on the United States' southern border in 2019 and 2020. Am. Compl. ¶ 2. On April 9, 2019, the United States Army Corps of Engineers (USACE) awarded Contract No. W912PP-19-C-0018 (the Contract) to SLS for "a design-build project consisting of approximately 46 miles of primary bollard fence replacement including gates, drainage, roads, power distribution, demolition and disposal in El Paso Sector, New Mexico." Pl.'s Ex. 1 at 1; *see also* Am. Compl. ¶¶ 36, 38. Work did not commence immediately due to ongoing environmental litigation. Am Compl. ¶ 36.

In the following months, Plaintiff and USACE were unable to reach agreement on price or schedule. Am. Compl. ¶ 37. In September 2019, USACE unilaterally definitized the Contract via modification P00005, effectively setting fixed prices under which Plaintiff would perform and establishing January 5, 2021, as the contract completion date. Am. Compl. ¶ 37. Although Plaintiff deemed the schedule unreasonable, Am. Compl. ¶ 37, it does not allege that it asserted any right to an adjustment in accordance with Federal Acquisition Regulation (FAR) 52.243-4(e) (the Changes Clause) within 30 days of the change. *See* Pl.'s Ex. 1 at 7 (Plaintiff "failed to comply with contractually mandated notice provisions").

Several months later, in modification P00006, USACE again unilaterally modified the Contract to add an additional segment of border wall to the work requirements. Pl.'s Ex. 1 at ¶ 2. The additional 2.4-mile segment covered "steep and rocky terrain," different in kind from the terrain previously involved in the Contract. Am. Compl. ¶ 40. Although Plaintiff assessed that additional days were necessary to complete the primary barrier and again raised scheduling concerns, USACE added no additional construction days to complete the extra 2.4 miles. Am. Compl. ¶¶ 41-43. Instead, USACE required that construction of the entire 48.4 miles of primary border barrier be completed no later than December 31, 2020. Am. Compl. ¶ 43. However, as part of the same action, USACE extended the overall contract completion date to the end of June 2021, giving Plaintiff additional time to complete the attributes (electrical, CCTV, fiber, and lighting). Am. Compl. ¶ 43. Again, Plaintiff did not assert any right to an adjustment in accordance with the Changes Clause of the Contract. *See* Pl.'s Ex. at 7.

Plaintiff alleges that, in performing the Contract, it faced significant unexpected delays caused by events beyond its control, including severe weather, the COVID-19 pandemic, and Government-caused delays and requirements associated with blasting operations. Am. Compl. ¶¶ 44-57. Nonetheless, Plaintiff completed the original 46-mile segment of border wall in mid-December 2020, as well as "nearly all of the 2.4-mile segment … except for approximately 2000 linear feet" located on a mountain peak. Am. Compl. ¶¶ 58-59. Plaintiff does not allege that, when the performance period closed, it notified USACE of any delays within 10 days as required by FAR 52.249-10(b)(2) (the Default Clause) or sought additional time to complete the project. *See* Pl.'s Ex. at 7.

On January 21 and 23, 2021, USACE formally suspended Plaintiff's performance on the Contract. Am. Compl. ¶ 27. On May 1, 2021, USACE terminated the Contract in its entirety for convenience. Am. Compl. ¶ 27, 60.

USACE issued the initial CPAR for the Contract on October 10, 2020 (the 2020 CPAR). Am. Compl. ¶ 62. USACE rated Plaintiff as "Marginal" for each evaluation factor. Am. Compl. ¶ 62. Plaintiff challenged the 2020 CPAR, with the Contracting Officer ultimately recognizing that the "Government failed to meet many of the requirements and guidelines in the FAR and CPARS guidance." Am. Compl. ¶ 64. The Contracting Officer directed that the 2020 CPAR be vacated and that Plaintiff's performance be reassessed. Am. Compl. ¶ 64.

Rather than reissue the 2020 CPAR, the Government issued a new CPAR on January 27, 2022, which covered the entire performance period, from April 9, 2019 – April 30, 2021 (the 2021 CPAR). Am. Compl. ¶ 65. Plaintiff was assessed "Marginal" ratings in Quality, Management, and Regulatory Compliance, an "Unsatisfactory" rating in Schedule, and a "Satisfactory" rating in Small Business Subcontracting. Am. Compl. ¶ 65. Although Plaintiff again challenged these ratings, the Reviewing Official finalized the CPAR on March 28, 2022. Am. Compl. ¶ 67.

On September 7, 2022, Plaintiff submitted a claim pursuant to the CDA and FAR 52.233-1 (the Claim) in connection with the Contract. Am. Compl. ¶ 13. The Claim requested that USACE vacate and reassess the 2021 CPAR. Am. Compl. ¶ 13.

On March 23, 2023, the Contracting Officer issued a COFD granting in part and denying in part the Claim. Am. Compl. ¶ 15; *see generally* Pl.'s Ex. 1. Specifically, the Contracting Officer concluded that Plaintiff's Schedule and Regulatory Compliance ratings warranted adjustments from "Marginal" to "Satisfactory." Pl.'s Ex. 1 at 6; *see also* Am. Compl. ¶ 124. However, the Contracting Officer affirmed Plaintiff's "Marginal" Quality and Management ratings. Am. Compl. ¶¶ 20, 124; Pl.'s Ex. 1 at 6. The Contracting Officer deemed Plaintiff's arguments with respect to timeliness meritless. Am. Compl. ¶ 20; Pl.'s Ex. 1 at 8.

On March 22, 2024, Plaintiff brought this suit under the Tucker Act, 28 U.S.C. § 1491(a), and the CDA, 41 U.S.C. §§ 7101-7109. Compl. at 1; Am. Compl. ¶ 18.

## LEGAL STANDARDS

The Government moves to dismiss this suit pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims. Rule 12(b)(1) permits dismissal for lack of subject-matter jurisdiction.[1] This Court's jurisdiction is dependent on an unequivocal waiver of sovereign immunity by the United States. *United States v. Testan*, 424 U.S. 392, 399 (1976). If the Court determines that it lacks subject-matter jurisdiction, it must dismiss the action. Rule 12(h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The plaintiff bears the burden to demonstrate that jurisdiction is proper by a preponderance of the evidence. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When considering a motion to dismiss under Rule 12(b)(1), "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

---

[1] Court of Federal Claims Rule 12(b)(1) is the same as Federal Rule of Civil Procedure 12(b)(1). *Compare* RCFC 12(b)(1) *with* Fed. R. Civ. P. 12(b)(1).

Rule 12(b)(6) permits the Court to dismiss an action for failure to state a claim upon which relief may be granted.[2] Dismissal is proper under Rule 12(b)(6) "when a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought." *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021). The Court "must accept as true all the factual allegations in the complaint and … must indulge all reasonable inferences in favor of the non-movant." *Fishermen's Finest, Inc. v. United States*, 59 F.4th 1269, 1274 (Fed. Cir. 2023). However, "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To survive a challenge pursuant to Rule 12(b)(6), a plaintiff must plead more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## DISCUSSION

Plaintiff alleges that USACE's actions were not only unlawful, arbitrary, capricious, and an abuse of discretion,[3] but constitute a breach of the Contract, a breach of the covenant of good faith and fair dealing, and a breach of the implied duty to cooperate. Am. Compl. ¶ 15. The Government moves to dismiss Plaintiff's Amended Complaint for lack of standing (with respect to its procedural allegations) and failure to state a claim (with respect to its substantive allegations). *See generally* ECF 32.

### I. Plaintiff Does Not Have Standing to Challenge Procedural Violations Relating to the Issuance of the 2021 CPAR

The Court begins by addressing the Government's standing argument. As relevant here, Plaintiff alleges that USACE failed to follow required procedures for issuing a CPAR assessment.[4] *See, e.g.*, Am. Compl. ¶ 130. Specifically, Plaintiff alleges that, in violation of FAR 42.15, "[t]he 2021 CPAR was untimely, being issued late and covering a two-year rather than an annual period[.]" *Id*. The Government maintains that Plaintiff lacks standing to assert this claim, which is incorporated into Counts I, III, and IV of the Amended Complaint. ECF 32 at 10.

---

[2] Court of Federal Claims Rule 12(b)(6) is the same as Federal Rule of Civil Procedure 12(b)(6). *Compare* RCFC 12(b)(6) *with* Fed. R. Civ. P. 12(b)(6).

[3] As discussed *infra*, Plaintiff's response to the Motion to Dismiss argues that application of the arbitrary and capricious standard is inappropriate in the instant case. *See* ECF 33 at 43-46. However, in its Amended Complaint, Plaintiff explicitly pled that "USACE's evaluation of SLS's performance in the 2021 CPAR is unlawful, arbitrary, capricious, and an abuse of discretion." Am. Compl. at 39; *see also* Am. Compl. ¶¶ 136, 138.

[4] The Government does not argue the Court should dismiss Plaintiff's Complaint for lack of standing with respect to its substantive allegations regarding USACE's assignment of CPAR ratings. *See generally* ECF 32.

"[The Supreme Court] has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright*, 468 U.S. 737, 754 (1984). For a party to have Article III standing,[5] it must show: (1) an injury in fact; (2) "a causal connection between the injury and the conduct complained of;" and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

In *Todd Construction*, the Federal Circuit considered whether a contractor contesting an adverse performance evaluation had standing to challenge the Government's alleged failure to follow four procedural requirements, to include: (1) re-evaluating the interim "unsatisfactory" rating every three months; and (2) issuing a final evaluation within sixty days of project completion. 656 F.3d 1306, 1315 (Fed. Cir. 2011). There, the Federal Circuit recognized that in cases involving fundamental procedural rights, some courts of appeals have relaxed the causation standard when determining standing for procedural injuries, and deemed it "satisfied when following the correct procedures plausibly *may* have changed the result." *Id.* (emphasis added).[6] However, the Federal Circuit explained that, in cases where a plaintiff alleges "minor procedural violations," it must "show that it was prejudiced by a significant error" to have standing. *Id.* Put another way, the plaintiff must show that "but for the error, it would have had a substantial chance" of redress. *Id.* (citing *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed. Cir. 2009)). The Federal Circuit concluded that the procedural timing requirements raised by the plaintiff in that case "d[id] not fall into the category of fundamental procedural rights" and declined to apply the relaxed standard to such "minor procedural violations." *Id.*

Here, Plaintiff alleges procedural violations that are cut from the same cloth as those in *Todd Construction*. Specifically, Plaintiff alleges that the 2021 CPAR impermissibly covers a two-year period of performance and was "woefully late" with respect to both the 2020 and 2021 performance periods. Am. Compl. ¶¶ 82, 84; *see also* ECF 33 at 15. As in *Todd Construction*, the allegations here relate to relate to timeliness; they concern the frequency of evaluations and the timing of issuance. 656 F.3d at 1310. Although Plaintiff attempts to distinguish *Todd Construction* by arguing that the procedural violations here "were neither minor nor inconsequential," ECF 33 at 16, 23-24, Plaintiff ignores that two of the purported procedural errors in *Todd Construction* were remarkably similar to the ones alleged here. *Compare* Am. Compl. ¶ 77 (alleging failure to evaluate annually) *with* 656 F.3d at 1315 (alleging failure to re-evaluate the interim "unsatisfactory" rating every

---

[5] "The Court of Federal Claims, though an Article I court, … applies the same standing requirements enforced by other federal courts created under Article III." *Anderson v. United States,* 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003).

[6] *See also Todd Constr.*, 656 F.3d at 1315 n.8 (citing Richard J. Pierce, Jr., *Making Sense of Procedural Injury*, 62 Admin. L. Rev. 1, 9 (2010) ("Each of the contexts in which courts have applied [the relaxed standard] … involved deprivation of a fundamental procedural right. Each of the procedural rights at issue was either … constitutionally required or the subject of a statute in which Congress required the agency to provide the procedure.")).

three months); *compare also* Am. Compl. ¶¶ 78, 80 (alleging failure to issue an evaluation within 120 days of performance) *with* 656 F.3d at 1315 (alleging failure to issue a final evaluation within sixty days of project completion). Given these similarities, the Court finds that Plaintiff's allegations fall squarely within the ambit of *Todd Construction*; they are not so different as to implicate "fundamental procedural rights," which would trigger a relaxed standing analysis.[7] *Todd Constr.*, 656 F.3d at 1315. Accordingly, to establish standing, it is not enough to merely show that following the correct procedures "*may* have changed the result." *See id.* at 1315-16. Instead, Plaintiff must "show that it was prejudiced by a significant error." *Id.* at 1315.

Resisting this reasoning, Plaintiff effectively resorts to asking the Court to ignore binding precedent. ECF 33 at 25 ("To the extent the Federal Circuit in *Todd Construction* requires [allegations of prejudice], this is in error."). The Court cannot ignore the precedent of a higher court. "[T]he Court of Federal Claims may not deviate from the precedent of the … Federal Circuit any more than the Federal Circuit can deviate from the precedent of the … Supreme Court." *Crowley v. United States*, 398 F.3d 1329, 1335 (Fed. Cir. 2005). The Federal Circuit has held that, to establish standing in connection with a minor procedural violation, a plaintiff must allege prejudice. *Todd Constr.*, 656 F.3d at 1315-16. The Court faithfully follows that precedent today, and thus turns to an analysis of Plaintiff's allegations of prejudice.

In its Amended Complaint, Plaintiff alleges four types of prejudice. *See* Am. Compl. ¶¶ 87- 91. The leading one is that the delay in issuance "deprived SLS of the ability to address, and where necessary, improve, its performance in future review periods." Am. Compl. ¶ 88. Plaintiff maintains that, had the Government timely issued its performance evaluations, it "would have had an earlier *opportunity* to respond to the government's concerns and correct any perceived deficiencies." Am. Compl. ¶ 88 (emphasis added).

Crucially, as in *Todd Construction*, Plaintiff does not allege in connection with this so-called prejudice that "the outcome of the performance evaluation[] would have been any different if the purported procedural errors had not occurred" or that "government compliance with its procedural standards would have changed its actions." 656 F.3d at 1316. Instead, Plaintiff merely alleges it was deprived of an opportunity to take curative action, leaving it "no chance to correct or address purported performance issues." *See* Am. Compl. ¶¶ 12, 88 ("SLS *could* either have disputed sooner, or corrected" the CPAR) (emphasis added). When faced with almost identical allegations of harm in *Todd Construction*, the Federal Circuit declined to find prejudice and concluded that the plaintiff lacked standing with respect to procedural violations. 656 F.3d at 1316 ("Although [the plaintiff] alleged it was not provided 'an *opportunity* to cure any perceived deficiencies in

---

[7] The Court likewise rejects Plaintiff's suggestion that the Federal Circuit's holding in *Todd Construction* is limited to the exact procedural violations alleged by the plaintiff in that case. *See* ECF 33 at 17 n.2. Instead, the Federal Circuit distinguished between "*cases* involving fundamental procedural rights" and those involving "minor procedural violations," *Todd Constr.*, 656 F.3d at 1315 (emphasis added), indicating that all procedural violations fall into one category or the other.

its performance,' [it] did not allege that if the required procedures had been followed, it would have taken curative action or that the performance evaluation would have been different.") (emphasis added) (citation omitted).

Skipping ahead, the third prejudice Plaintiff cites is more of the same. Specifically, Plaintiff alleges that "the [G]overnment's failure to timely issue the 2021 CPAR has hindered SLS's ability to protect its rights and reach a resolution on this issue faster." Am. Compl. ¶ 90. Plaintiff maintains that such delay "made it more difficult both for SLS to get an accurate account of its performance during the relevant period, and for SLS to challenge the accuracy of the CPAR it did receive." *Id.* ¶ 90. Like Plaintiff's first allegation of prejudice, this prejudice is based on lost opportunity. *See id.* ¶ 88 (lost ability to address performance), *id.* at ¶ 90 (lost ability to protect rights). But lost opportunity alone is not sufficient to establish prejudice, and Plaintiff has not alleged any plausible facts to indicate that, had required procedures been followed, it "would have taken curative action or that the performance evaluation would have been different." *Todd Constr.*, 656 F.3d at 1316. Instead, when presented with the opportunity to clarify its position, Plaintiff merely asserts that, "if the CPAR [had] been issued earlier, SLS *might* have been able to either alter its performance or bring a challenge more quickly … which *might* have altered the outcome of the COFD." ECF 33 at 19 (emphasis added). These mere possibilities are not sufficient to establish prejudice. As discussed, the standard for minor procedural violations is not whether "following the correct procedures plausibly *may* have changed the result;" it is whether Plaintiff has shown actual prejudice. *Todd Constr.*, 656 F.3d at 1315-16.

Plaintiff's second and fourth allegations of prejudice fare no better. First, Plaintiff alleges without explanation that, "by combining two review periods … USACE has artificially downgraded the 2021 CPAR, making it seem as if SLS has shown no improvement." Am. Compl. ¶ 89. On its face, Plaintiff's allegation appears to allege that the outcome of its performance evaluation would have been different had the purported procedural error not occurred. However, the Government disputes this allegation, ECF 32 at 12, and Plaintiff offers no plausible facts to support its conclusory allegation. Nothing in the Amended Complaint explains why Plaintiff believes that a separate CPAR for the 2020-2021 performance period would have rated SLS's performance any higher than the previous period. Instead, Plaintiff simply complains that "SLS did not have the benefit of being put on notice of potential problems by the first CPAR it should have received," Am. Compl. ¶ 89, a grievance born of lost opportunity, much like Plaintiff's first and third alleged harms.[8]

---

[8] The fact that the thrust of Plaintiff's second alleged prejudice arises from a lost opportunity to take curative action is made even more apparent from Plaintiff's MTD Response, where Plaintiff clarifies that "SLS also alleges that had it been properly issued the first and second annual performance evaluations, it *could* have corrected any perceived deficiencies in its performance sooner." ECF 33 at 18 (citing Am. Compl. ¶ 88) (emphasis added).

Plaintiff's final allegation of prejudice is that, "by delaying issuance of the CPAR, the [G]overnment deprived SLS of a performance review to rely on in procurement competitions," resulting in "a 'neutral confidence' rating on past performance in at least one procurement because it did not appear to have sufficient experience in the requisite area." Am. Compl. ¶ 91. But this argument is also wholly speculative and conclusory. Plaintiff's Complaint is devoid of any plausible facts to show that, had the CPAR been timely issued, it would have improved upon its "neutral confidence" assessment on past performance in the cited procurement competition. As such, there is simply no basis to conclude that, even had the Government perfectly complied with the FAR's timing regulations, Plaintiff would have received a higher past performance rating in the subsequent procurement. Put differently, Plaintiff simply has not alleged facts which, taken as true, "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Moreover, in its Response to the Motion to Dismiss, Plaintiff makes clear that the perceived harm is based only on the *possibility* of a different outcome: "if the CPAR had been timely issued, SLS *might* not have received the split Marginal/Satisfactory ratings in 2021 and/or it *might* have been able to challenge those ratings sooner, *potentially* giving SLS a valid CPAR to rely on in other procurements." ECF 33 at 20 (emphases added).

For the foregoing reasons, the Court finds that Plaintiff has not shown, as required, that it was prejudiced by a significant error. *Todd Constr.*, 656 F.3d at 1315. Instead, Plaintiff's allegations related to prejudice are thin and conclusory to the extent they are made at all. Having failed to show prejudice, Plaintiff lacks standing to sue with respect to the procedural violations alleged here.

## II. Plaintiff Fails to State a Claim for Relief

In contrast to the procedural allegations described in Part I, Plaintiff has standing to sue based on its substantive allegations, including that USACE: (1) breached the Contract (Count I); (2) acted unlawfully, arbitrarily, and capriciously in assigning an inaccurate and unfair performance evaluation (Count II); (3) breached the covenant of good faith and fair dealing (Count III); and (4) breached the duty to cooperate (Count IV).

### A. Plaintiff's Breach of Contract Claim (Count I)

In Count I, Plaintiff argues that USACE's evaluation of its performance in the 2021 CPAR was substantively inaccurate,[9] in violation of FAR 42.15, and thus in breach of the Contract. Am. Compl. ¶ 133. This count fails.

To have a valid claim for breach of contract, Plaintiff bears the burden of showing: (A) a valid contract between the parties; (B) an obligation or duty arising out of the contract; (C) a breach of that duty; and (D) damages caused by the breach. *Peanut Wagon,*

---

[9] Plaintiff also alleges that the CPAR was untimely, claiming it was issued late and improperly covered a two-year rather than an annual period. Am. Compl. ¶ 130. Because the Court finds that Plaintiff lacks standing to challenge alleged procedural errors, the Court need not address the timeliness concerns raised by Plaintiff.

8

*Inc. v. United States*, 167 Fed. Cl. 577, 602 (2023) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)). When considering a motion to dismiss a breach of contract claim, the Court must "interpret the contract's provisions to ascertain whether the facts plaintiff alleges would, if true, establish a breach of contract." *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014).

It is undisputed that USACE and SLS entered into a valid contract. *See* ECF 30-1 at 2; Am. Compl. ¶ 36. As such, the Court's inquiry begins with the second element, whether the Government had an obligation or duty arising out of the Contract to provide a fair and accurate performance report to Plaintiff. Here, Plaintiff does not allege that the Contract contains any express reference to FAR 42.15 or the requirement for performance evaluations. *See generally* Am. Compl. Instead, in its Amended Complaint, Plaintiff alleges without support that:

> Courts have recognized that the CPAR review process and its requirements outlined in FAR 42.15 are incorporated into all government contracts, and benefit both the government and the contractor. Thus, the government's failure here to comply with the requirements of FAR 42.15 governing CPARs, as outlined above, constitutes a breach of the Contract.

Am. Compl. ¶ 132. *See also* ECF 33 at 39 ("By entering into the Contract, the government assumed an obligation and duty to conduct a performance review process that complies with FAR 42.15, since FAR 42.15 is an obligation and duty arising out of the Contract."). In the alternative, Plaintiff argues that FAR 42.15 *should* be read into the contract as a USACE obligation because (1) the appropriate avenue to challenge a CPAR is through the CDA; and (2) courts have recognized that certain mandatory regulations may be implicitly read into government contracts. ECF 33 at 39. These arguments lack merit.

"Whether and to what extent material has been incorporated by reference into a host document is a question of law." *Cook Biotech, Inc. v. Acell, Inc.*, 460 F.3d 1365, 1376 (Fed. Cir. 2006). Here, Plaintiff has not cited—and the Court is unaware of—any case that stands for the proposition that FAR 42.15 is automatically incorporated into all government contracts. Furthermore,

> [The Federal Circuit] has been reluctant to find that statutory or regulatory provisions are incorporated into a contract with the government unless the contract explicitly provides for their incorporation. *Smithson v. United States*, 847 F.2d 791, 794 (Fed. Cir. 1988). In *Smithson*, the court warned that wholesale incorporation of regulations into a contract would allow the contracting party to "choose among a multitude of regulations as to which he could claim a contract breach—and thus '[a] wholly new ground of obligation would be summarily created by mere implication.'" *Id*. (internal quotation omitted).

9

*St. Christopher Assocs., L.P. v. United States*, 511 F.3d 1376, 1384 (Fed. Cir. 2008). With the above standard in mind, this Court has previously rejected the suggestion that the FAR's CPAR regulations should be read into government contracts that do not otherwise reference or incorporate those regulations. *Gray Owl Servs., Inc. v. United States*, No. 13-963, 2014 WL 3955803, at *5 (Fed. Cl. Aug. 14, 2014), *aff'd*, 616 F. App'x 419 (Fed. Cir. 2015).

Likewise, the Court rejects Plaintiff's contention that FAR 42.15 is incorporated into the Contract simply because CPAR challenges fall under the CDA. ECF 33 at 39 ("Th[e] contention [that FAR 42.15 is not specifically incorporated into the Contract] cannot be taken seriously considering that the appropriate avenue to challenge a CPAR is through the *Contract* Disputes Act.") (emphasis in original). It does not necessarily follow that CPARs regulations are incorporated into contracts simply because a performance evaluation dispute is treated as a contract-related claim pursuant to the CDA. Indeed, in *Todd Construction*, the Federal Circuit explicitly rejected this argument:

> CDA jurisdiction exists when the claim has some relationship to the terms *or performance* of a government contract. A contractor's claim need not be based on the contract itself (or a regulation that can be read into the contract) as long as it relates to its performance under the contract.

656 F.3d at 1314 (internal quotation marks and citation omitted) (emphasis in original). The Federal Circuit went on to clarify that "[i]n holding that the Claims Court has jurisdiction under the CDA, we do not suggest that the performance evaluation regulation should be read into the contracts. Rather, the regulation applies of its own force and directly governs the parties' performance under the contracts." *Id.* at 1314 n.6.

Having found that FAR 42.15 was not incorporated into the Contract, the Court concludes that the Government owed Plaintiff no contractual duty to provide a performance report, fair or otherwise. The facts Plaintiff alleges, if true, simply do not establish a breach of contract. *See Bell/Heery v. United States*, 739 F.3d at 1330. Accordingly, Count I fails to state a claim.

### B. Plaintiff's Claim for an Unlawful, Arbitrary, and Capricious CPAR (Count II)

Count II alleges that USACE's evaluation of SLS's performance in the 2021 CPAR is unlawful under FAR 42.15 and inconsistent with formal DoD Guidance, arbitrary, capricious, and an abuse of the Contracting Officer's discretion. Am. Compl. § 136. Specifically, Plaintiff alleges that the CPAR failed to accurately reflect SLS's performance due to errors on the Management and Quality factors and the Contracting Officer's failure to consider relevant information bearing on SLS's performance. *See, e.g.*, Am. Compl. §§ 74, 92-121, 138; ECF 33 at 27. The Government moves to dismiss on the basis that Count II fails to state a claim for an arbitrary and capricious CPAR where the Amended Complaint fails to deny the deficiencies supporting Plaintiff's "Marginal" ratings. ECF 32 at 15-20.

*1. The CPAR Evaluation Process*

The FAR mandates that agencies prepare past performance evaluations and submit such evaluations into CPARS, the Governmentwide evaluation reporting tool for all past performance reports. FAR 42.1502(a). In accordance with FAR 42.1503(b)(1), a performance evaluation:

> should include a clear, non-technical description of the principal purpose of the contract or order. The evaluation should reflect how the contractor performed. The evaluation should include clear relevant information that accurately depicts the contractor's performance, and be based on objective facts supported by program and contract or order performance data. The evaluations should be tailored to the contract type, size, content, and complexity of the contractual requirements.

The FAR further provides that each assessment shall include an evaluation of the following factors: (1) technical (quality of product or service); (2) cost control; (3) schedule/timeliness; (4) management or business relations; and (5) small business subcontracting. FAR 42.1503(b)(2). The agency is to evaluate contractor performance using a rating scale, with these five ratings: "Exceptional," "Very Good," "Satisfactory," "Marginal," and "Unsatisfactory." FAR 42.1503(b)(4).

As relevant here, the definition of a "Marginal" rating is as follows:

> Performance does not meet some contractual requirements. The contractual performance of the element or sub-element being evaluated reflects a serious problem for which the contractor has not yet identified corrective actions. The contractor's proposed actions appear only marginally effective or were not fully implemented.

FAR 42.1503 Table 42-1(d). To justify a "Marginal" rating, the Government must "identify a significant event … that the contractor had trouble overcoming and state how it impacted the Government. A Marginal rating should be supported by referencing the management tool that notified the contractor of the contractual deficiency (e.g., management, quality, safety, or environmental deficiency report or letter)." *Id*. The FAR provides that "[t]he ultimate conclusion on the performance evaluation is a decision of the contracting agency." FAR 42.1503(d).

11

*2. Standard of Review*

Before addressing the merits, the Court must first address the appropriate standard of review.[10] The CDA provides that review of a contracting officer's decision subject to the Act must "proceed de novo in accordance with the rules of the appropriate court." 41 U.S.C. § 7104(b)(4). The parties agree on this point. ECF 33 at 43; ECF 35 at 12. They disagree, however, on whether a CPAR evaluation or COFD is nonetheless afforded any deference. The Government maintains that, "according to *Todd Construction*, a CPAR claim is a CDA claim in which the question to be answered is whether the contracting officer abused their discretion, [and thus] the standard of proof is arbitrary and capricious, which the Court is to determine de novo." ECF 35 at 13. In contrast, Plaintiff argues that, in a CDA case, no deference is afforded to agency decisions, and thus a CPAR evaluation need only "be reasonable based on the facts and evidence before the court." ECF 33 at 26-27, 44.

In *Todd Construction*, the Federal Circuit recognized that, to state a claim for relief arising from the assignment of a performance evaluation, "[a plaintiff] must plead facts which give rise to a plausible inference that the government abused its discretion in awarding the negative performance ratings." 656 F.3d at 1316. Although Plaintiff characterizes this statement as dicta and maintains the Federal Circuit "never directly addressed whether a deferential standard or the CDA's de novo standard applied," ECF 33 at 45, the Court disagrees. The Federal Circuit's position in *Todd Construction* is clear and unequivocal; courts must review performance evaluations for an abuse of discretion. *Todd Constr.*, 656 F.3d at 1316.

That is not to say that the Court disregards its obligation under the CDA to apply this substantive standard de novo, rather than through a deferential standard of review. The Federal Circuit has explained:

> The plain language of the CDA … make[s] it clear that, in court litigation, a contractor is not entitled to the benefit of any presumption arising from the contracting officer's decision. De novo review precludes reliance upon the presumed correctness of the decision. Thus, once an action is brought following a contracting officer's decision, the parties start in court or before the board with a clean slate.

---

[10] Plaintiff accuses the Government of relying on the wrong standard of review for CDA claims. ECF 33 at 43. However, despite taking issue with the "arbitrary and capricious" standard, Plaintiff explicitly acknowledged that "a contracting officer may be accorded discretion in preparing a performance evaluation under FAR Subpart 42.15" and pled that USACE's assessment of SLS in the 2021 CPAR was "arbitrary, capricious, and an abuse of the Contracting Officer's discretion under the Contract." Am. Compl. ¶¶ 136-37; *see also id.* ¶¶ 74, 76. The Court will not fault the Government for responding to the allegations as pled.

12

*Wilner v. United States*, 24 F.3d 1397, 1401-02 (Fed. Cir. 1994) (en banc). More recently, the Federal Circuit elaborated:

> The CDA's de novo standard—rooted partly in the statute's command that "'[s]pecific findings of fact are not required:" to be made by the contracting officer, and "[i]f made, specific findings of fact are not binding in any subsequent proceeding,'" 41 U.S.C. § 7103(e)—requires a determination by the [Court] on the evidentiary record developed in the proceeding. One aspect of that requirement is that the statute "demands an objective inquiry, not an evaluation of the contracting officer's subjective beliefs" when ascertaining whether the government has met its burden.

*Dep't of Transp. v. Eagle Peak Rock & Paving, Inc.*, 69 F.4th 1367, 1375-76 (Fed. Cir. 2023).

In reconciling the CDA's de novo standard and the Federal Circuit's admonition to review performance ratings for an abuse of discretion, the Court finds *Eagle Peak* instructive. Plaintiff argues that *Eagle Peak* stands for the proposition that "a deferential 'arbitrary and capricious' or 'abuse of discretion' standard is simply not consistent with the CDA's commands." ECF 33 at 46. The Court's reading of *Eagle Peak* is more nuanced. In *Eagle Peak*, the Federal Circuit found that the Board of Contract Appeals failed to separate its analysis of whether a contracting officer's decision to terminate a contract for default was pretextual (which required examination of the officer's reasoning) from the required de novo analysis of whether a termination for default was reasonable under contract standards. 69 F.4th at 1377-78 (Fed. Cir. 2023). After discussing how a substantive "reasonableness" standard applied in failure-to-make progress cases, the Federal Circuit noted that the CDA requires an objective inquiry into whether the Government met its burden in establishing the contracting officer had a reasonable basis for terminating a contract for default. *Id.* at 1375-76. The Federal Circuit concluded that, in a CDA case, adjudication must proceed on the evidence and arguments made in the adjudicatory proceeding and, in *that* case, the "substantive contract standard … doubly considers what is 'reasonable'… but the CDA tribunal *must apply that substantive contract requirement de novo*, not through one of the deferential standards of review." *See also id.* at 1377 (emphasis added). Put differently, the Federal Circuit reviewed de novo whether the substantive standard was met. *Id.*

The Court discerns no reason the same logic would not apply in similar cases, especially as the Federal Circuit has previously recognized that, notwithstanding the CDA's requirement of de novo review, some deference may still be appropriate in a CDA case. *See, e.g., Burnside-Ott Aviation Training Ctr. v. Dalton*, 107 F.3d 854, 859-60 (Fed. Cir. 1997) (interpreting contract terms de novo in a CDA case to find that the Board of Contract Appeals may not reverse a contracting officer's affirmance of a discretionary decision "unless the discretion employed in making the decision is abused"). The Court

13

thus rejects the suggestion that the Federal Circuit's guidance in *Eagle Peak* is fundamentally inconsistent with *Todd Construction*.

Accordingly, applying the binding precedent of *Todd Construction*, and considering it alongside consistent Federal Circuit cases, the Court reviews de novo whether Plaintiff met its burden in plausibly alleging that the Contracting Officer abused her discretion in assigning (and ultimately affirming) negative performance ratings.

### 3. Minimum Requirements for Performance Reviews

Turning to Plaintiff's substantive challenges concerning the content of its CPAR, a decision constitutes an abuse of discretion if it is found to be arbitrary and capricious. *U.S. Fid. & Guar. Co. v. United States*, 676 F.2d 622, 630 (Ct. Cl. 1982). "[A] showing that there was clearly no reasonable basis for the official action would be enough to demonstrate an abuse of discretion."[11] *JKB Sols. and Servs., LLC v. United States*, 170 Fed. Cl. 241, 256 (Fed. Cl. 2024) (citing *Keco Indus., Inc. v. United States*, 492 F.2d 1200, 1204-05 (Ct. Cl. 1974), *abrogated on other grounds by Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1331-33 (Fed. Cir. 2001)).

Here, Plaintiff first alleges that the 2021 CPAR fails to meet the minimum requirements for performance reviews because it failed to evaluate Plaintiff's technical performance in constructing the border wall. Am. Compl. ¶¶ 92-99. Specifically, Plaintiff alleges:

> the CPAR does not contain any discussion of the quality of the work that SLS had performed up until [the contract was terminated for convenience]—indeed, there is no discussion of whether the bollard fence or other structures meet contractual requirements (they do), nor of the quality of SLS's workmanship on these efforts.

Am. Compl. ¶ 95. In Plaintiff's view, such omission runs afoul of "the most fundamental requirement of a performance review—assessing the actual performance of the contractor in accomplishing the purpose of the Contract." Am. Compl. ¶ 93.

However, no language in the FAR expressly imposes such a requirement. As discussed, the FAR provides that an "evaluation should include a clear, non-technical description of the principal purpose of the contract or order" and "reflect how the contractor performed." FAR 42.1503(b)(1). Although the evaluation must be "based on objective facts" and "accurately depict[] the contractor's performance, the plain language of FAR 42.1503(b)(1) does not actually specify that an evaluation must address the contractor's

---

[11] The Court notes that, for all practical purposes, under either standard the ultimate question is one of reasonableness. *Compare* ECF 33 at 26 ("the CPAR's evaluation must be *reasonable* based on the facts and evidence before the court") (emphasis added) *with Todd Constr., L.P. v. United States*, 88 Fed. Cl. 235, 248 (2009) ("Despite the discretionary nature of the assignment of a performance evaluation rating, the exercise of that discretion must be *reasonable*.") (emphasis added).

14

performance *in meeting the principal purpose of the contract*, as alleged by Plaintiff. Am. Compl. ¶ 93 (emphasis added). Similarly, although FAR 42.1503(b)(2)(i) mandates that an agency assess a contractor's "Technical (quality of product or service)," it does not specify that the evaluation address the contractor's performance in meeting the contract's primary purpose. Nor does Plaintiff cite any legal authority for this proposition. Instead, Plaintiff simply argues without support that the "[Technical (quality of product or service) factor] exists so that government agencies [can] provide information on 'the principal purpose of the contract or order' and 'how the contractor performed' in meeting the principal purpose of the contract." Am. Compl. ¶ 93.

Not only does the FAR's plain language not compel Plaintiff's interpretation, but Plaintiff's statements concerning the FAR requirements constitute legal conclusions, not facts. Though the Court indulges all reasonable inferences in favor of Plaintiff's factual allegations, *Fishermen's Finest*, 59 F.4th at 1274, Plaintiff's legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Left only with Plaintiff's factual allegations, the Court discerns no basis to support "a plausible inference that the government abused its discretion" by declining to address—in the detail wished for by Plaintiff—the quality of its work. *Todd Constr.*, 656 F.3d at 1316.

    4. *Management Rating*

Plaintiff next complains that its "Marginal" rating on "Management" incorrectly attributed issues with the project to a purported lack of effective project management. *See* Am. Compl. ¶ 100. Specifically, the 2021 CPAR reported that "[l]ack of adequate personnel, lack of design approvals and an acceptable schedule … greatly impacted SLSCOs ability to manage the project effectively." ECF 10-1 at 4.

Here, Plaintiff alleges three bases for challenging its "Marginal" rating. In addition to arguing that the CPAR failed to assess Plaintiff's actual performance on the "principal purpose of the contract or order," Am. Compl. ¶ 114, as discussed above, Plaintiff alleges that the "Marginal" rating ignores Government-caused and other excusable delays, to include USACE's unilateral addition of 2.4 miles to the project without an extension of time, unreasonable agency demands, and COVID-related and weather delays. *See* Am. Compl. ¶¶ 101-08. Plaintiff maintains that, because USACE upgraded Plaintiff's "Schedule" rating to "Satisfactory" following Plaintiff's initial challenge, so too must USACE upgrade Plaintiff's "Management" rating, for "a 'Management' rating based on schedule problems cannot stand" under such circumstances. Am. Compl. ¶ 100.

But Plaintiff conflates the Schedule evaluation with the Management evaluation. Per the FAR, "Schedule" and "Management" are two separate evaluation factors. *See* FAR 42.1503(b)(2). Plaintiff cites no authority for the proposition that separate subfactors must be rated identically, and it does not necessarily follow that, just because USACE upgraded Plaintiff's "Schedule" rating, Plaintiff also merits a higher "Management" rating. The Court is mindful that even excusable delays may be poorly managed.

15

Regarding Plaintiff's complaint that its "Marginal" rating improperly ignores the Government's unilateral addition of additional miles of fencing to the project with no accompanying schedule change, Am. Compl. ¶¶ 102-04, the Court likewise finds that Plaintiff's allegations do not plausibly suggest entitlement to relief. *See Steffen*, 995 F.3d at 1379. Review of the relevant Contract modification reveals that the change was entered into pursuant to FAR 52.243-4 (the Changes Clause). ECF 10-2 at 1. The Changes Clause empowers contracting officers to unilaterally issue change orders but affords contractors an opportunity to assert rights to an adjustment within thirty days. FAR 52.243-4(a), (e). Critically, Plaintiff does not allege that it complied with this contractually mandated notice provision by asserting any right under the Changes Clause within thirty days, as required. *See* ECF 30-1 at 7. Accordingly, Plaintiff accepted the period of performance and cannot now plausibly allege that the Contracting Officer abused their discretion by failing to account for the Government's so-called "unilaterally-imposed, wildly unrealistic project deadlines." Am. Compl. ¶ 101.

Next, Plaintiff alleges that its "Marginal" Management rating ignores the Government's acceleration of construction for a one-day photo opportunity at the behest of the USACE Chief of Construction and Project Engineer, who allegedly agreed to set aside contracting requirements in order to meet a political construction milestone. *See* Am. Compl. ¶¶ 109-112. Plaintiff does not allege that these officials were authorized to waive contracting requirements. As such, given the long-settled authority that only contracting officers may modify a contract or issue a contract change, the Court finds this allegation wholly unsupported by the relevant legal authorities. *See* 48 C.F.R. 1.602-1(a) ("Contracting officers have authority to … administer … contracts"); FAR 43.102(a) ("Only contracting officers acting within the scope of their authority are empowered to execute contract modifications …."); FAR 43.202 (providing that "Change orders shall be issued by the Contracting Officer" unless such authority is properly delegated); *Winter v. Cath-dr/Balti Joint Venture*, 497 F.3d, 1339, 1344 (Fed. Cir. 2007) ("With respect to contracts for supplies and services, the federal government has given the authority to enter into and modify contracts to only a limited class of government employees: contracting officers."). As such, Plaintiff cannot plausibly state a claim for relief on this basis.

As a general matter, Plaintiff simply has not plausibly pled any facts that entitle it to relief. To plausibly plead an arbitrary and capricious assignment of a "Marginal" rating, a contractor must plead facts demonstrating that its performance did in fact meet contract requirements, and that the contractor's actions were effective in resolving the identified problem(s). *See* FAR 42.1503, Table 42-1(d). However, not only do some of Plaintiff's arguments run afoul of long-settled authority and contract principles, but Plaintiff does not challenge other examples of poor management that support Plaintiff's "Marginal" rating in the 2021 CPAR. For example, the CPAR reports that Plaintiff proposed multiple design variances which did not comply with contract requirements and that "[e]ven SLSCOs superintendent and QC manager could not tell us where the crew would be working the

following day." ECF 10-1 at 3, 4. With these facts unchallenged, Plaintiff cannot plausibly raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

   5. *Quality Rating*

Plaintiff next alleges that the "Marginal" rating it received for the Quality evaluation factor was improper for two reasons. First, Plaintiff alleges that the same problems with the CPAR that affected the Management rating similarly affected Plaintiff's Quality rating. Am. Compl. ¶ 117. For the same reasons discussed above, this argument fails.

Next, Plaintiff challenges its Quality rating due to its singular focus on quality control issues rather than the quality of the work Plaintiff was hired to perform. Am. Compl. ¶ 119. This claim similarly fails. First, as previously discussed, Plaintiff points to no actual requirement that the Government evaluate a contractor's performance on "the principal purpose of the contract or order" and "how the contractor performed" in meeting that purpose. *See* Am. Compl. ¶ 121.

Second, CPARS Guidance provides that, for construction contracts, "Quality reflects the contractor's management of the quality control program, as well as the quality of the work itself." Guidance for the Contractor Performance Assessment Reporting System ¶ A3.27.4.1 (July 2024), Ex. C at 45, ECF 11-3. Assessing officials are thus directed to "[s]pecifically describe contractor's quality control system." *Id.* Given this guidance, the Court finds that there was a reasonable basis for the Contracting Officer to base Plaintiff's Quality assessment on documented quality control issues, and did not abuse their discretion by deeming quality control "necessary to ensure an end product which complies with the contract requirements." ECF 10-1 at 7. Moreover, the Court notes that, though the CPAR itself was silent as to the quality of Plaintiff's work, the COFD issued following Plaintiff's Claim explicitly noted deficiencies in quality (e.g., drainage gates welded shut, miles of ungrouted barrier) and tied those deficiencies directly to Plaintiff's lack of appropriate quality control personnel. *See* ECF 30-1 at 7 ("[W]ithout these proper quality control personnel, the quality of the project suffered."). Plaintiff does not deny those deficiencies or allege that its performance actually met the quality and quality control requirements of the Contract, as required to contest a "Marginal" rating. *See* FAR 42.1503, Table 42-1(d). Accordingly, the Court finds that Plaintiff has not plausibly stated a claim for an arbitrary and capricious Quality rating. *See U.S. Fid. & Guar. Co.*, 676 F.2d at 630.

Taken as a whole, nothing in Plaintiff's Complaint "give[s] rise to a plausible inference that the government abused its discretion in awarding the negative performance ratings." *Todd Constr.*, 656 F.3d at 1316. At most, Plaintiff's arguments merely reflect a disagreement with USACE's discretionary judgment. Accordingly, Count II is dismissed.

17

C. <u>Plaintiff's Breach of Good Faith and Fair Dealing Claim (Count III)</u>

The Court next turns to the question of whether "USACE breached the covenant of good faith and fair dealing by issuing a procedurally and substantively deficient CPAR that USACE knew failed to meet the requirements of the FAR and DoD Guidance." Am. Compl. ¶ 141.

Every contract, including one with the federal government, imposes upon each party an implied duty of good faith and fair dealing in its performance and enforcement. *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014) (quoting Restatement (Second) of Contracts § 205 (1981)). The covenant requires a party "not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005); *see also* Restatement (Second) of Contracts § 205 (1981). "Although the implied duty of good faith and faith dealing attaches to every contract, *what* that duty entails depends in part on what that contract promises (or disclaims)." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 830 (Fed. Cir. 2010).

To be sure, "a breach of the *implied* duty of good faith and fair dealing does not require a violation of an *express* provision in the contract." *Metcalf Constr.*, 742 F.3d at 994 (emphasis in original). However, "[t]he implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract or create duties inconsistent with the contract's provisions." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010). In other words, "the duty of good faith must be connected to a duty clearly imposed by the contract itself." 2 E. Allan Farnsworth, Farnsworth on Contracts § 7.17 at 358 (3d ed. 2004); *see also Dobyns v. United States*, 915 F.3d 733, 740-41 (Fed. Cir. 2019) ("Inferring an implied duty … without a tether to the contract terms, would fundamentally alter the balance of risks and benefits associated with the 2007 agreement and cannot be the basis of a claim for breach of the implied duty of good faith and fair dealing."). This is because "while the implied duty exists because it is rarely possible to anticipate in contract language every possible action or omission by a party that undermines the bargain, the nature of that bargain is central to keeping the duty focused on 'honoring the reasonable expectations created by the autonomous expressions of the contracting parties.'" *Metcalf Constr.*, 742 F.3d at 991 (citation omitted).

Here, Plaintiff alleges it was deprived of the benefits of its bargain under the Contract, which included the right to a fair and accurate CPAR. Am. Compl. ¶ 142. However, Plaintiff makes no showing that the alleged breach was in some way connected to the bargain struck in the Contract. Instead, Plaintiff's alleged entitlement stems from FAR 42.15. *See* Am. Compl. ¶¶ 142-43. Because the allegedly breached duty is "without a tether to the contract terms," *Dobyns*, 915 F.3d at 740-41, and "[t]he implied duty of good faith and fair dealing cannot expand a party's contractual duties beyond those in the express contract," *Precision Pine*, 596 F.3d at 831, the Court concludes that the implied duty of good faith and fair dealing provides no basis for relief in this case. *See Allen Eng'g Contractor Inc. v. United States*, 611 Fed. App'x. 701, 709 (Fed. Cir. 2015) (rejecting

18

argument that Navy breached the covenant of good faith and fair dealing by not following its own procedures because no contractual duty attached).

In reaching this conclusion, the Court notes that the facts described in the Complaint bear no resemblance to the types of cases that are typical of a good faith and fair dealing case:

> Cases in which the government has been found to violate the implied duty of good faith and fair dealing typically involve some variation on the old bait-and-switch. First, the government enters into a contract that awards a significant benefit in exchange for consideration. Then, the government eliminates or rescinds that contractual provision or benefit through a subsequent action directed at the existing contract.… the government may be liable for damages when the subsequent government action is specifically designed to reappropriate the benefits the other party expected to obtain from the transaction, thereby abrogating the government's obligations under the contract.

*Precision Pine*, 596 F.3d at 829 (finding no breach where government's actions were not "specifically targeted" and did not reappropriate any benefit guaranteed by the contracts). Here, there is no indicia of governmental bait-and switch or double crossing. Nor is there any indication that the Government sought to injure Plaintiff in some way. *See White Buffalo Constr., Inc. v. United States*, 546 F. App'x 952, 956 (Fed. Cir. 2013). Instead, Plaintiff's claim arises from a disagreement over the content of the 2021 CPAR and whether it accurately reflects SLS's performance under the Contract. *See* Am. Compl. ¶¶ 142-43. However, the fact that USACE reached a different conclusion than SLS regarding SLS's performance and the contents of the CPAR does not, on its own, state a breach of the duty of good faith and fair dealing. *See Dotcom Assocs. I, LLC v. United States*, 112 Fed. Cl. 594, 600 (2013) (rejecting plaintiff's "failure-to-agree-with-plaintiff theory of breach of the implied covenant of good faith and fair dealing.").

For the foregoing reasons, the Court finds that Plaintiff's Complaint simply does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570. Accordingly, Count III is dismissed.

### D. Plaintiff's Claim for Breach of the Implied Duty to Cooperate (Count IV)

Plaintiff similarly alleges that USACE breached its implied duty to cooperate by issuing a CPAR that failed to accurately reflect its performance. Am. Compl. ¶ 147. In Plaintiff's view, issuance of an inaccurate CPAR "hindered SLS's performance on the Contract and resulted in substantial long-term damage to SLS's ability to procure additional work on behalf of the federal government." Am. Compl. ¶ 148.

"Both the duty not to hinder and the duty to cooperate are aspects of the implied duty of good faith and fair dealing." *Metcalf Constr.*, 742 F.3d at 991 (citation omitted); *see also Essex Electro Eng'rs, Inc. v. Danzig*, 224 F.3d 1283, 1291 (Fed. Cir. 2000) ("Every contract, as an aspect of the duty of good faith and fair dealing, imposes an implied obligation 'that neither party will do anything that will hinder or delay the other party in performance of the contract.'"). Accordingly, this claim fails for the same reasons as Count III.

## CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss (ECF 32) is **GRANTED.** Plaintiff's Amended Complaint is **DISMISSED** in its entirety. The allegations regarding procedural violations are dismissed for lack of standing pursuant to Rule 12(b)(1), while the remaining contentions are dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

_____
PHILIP S. HADJI
Judge